Carla **WALLACE**, Appellant,

v.

**ARCELORMITTAL VINTON, INC.**, Appellee.

No. 08-15-00095-CV

Court of Appeals of Texas, El Paso.

November 2, 2016

Hon. Jeffrey B. Pownell, Scherr & Legate, PLLC, El Paso, TX, for Appellant.

Hon. Gerald G. Howard, Kemp Smith, LLP, El Paso, TX, for Appellee.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

In this premises liability case, we revisit the implications of a hazard that is known both to the premises owner and the person who is injured. For the reasons noted below, we affirm.

## FACTUAL SUMMARY

This dispute comes to us following a summary judgment granted in favor of a property owner, ArelorMittal Vinton, Inc. (AMV),[1] and against Carla Wallace, a security guard working on the property. AMV runs a steel mill. It employs Mike Garcia Merchant Security to provide security services. Wallace was employed by Merchant Security as one of the security guards tasked with guarding the plant. She had worked at the plant continuously for two years before the accident which led to this lawsuit.

On March 24, 2012, Wallace worked the nighttime shift which covered the hours of 11:00 p.m. to 7:00 a.m. Her duties included inspecting various parts of the plant, including a building referred to as the machine shop. She made her rounds in a pickup and arrived at the machine shop around 1:00 a.m. A wide driveway fronts the machine shop. She parked the pickup in front of a garage door and doorway that provided access to the shop.

Wallace described the machine shop itself as "[d]ark, full of equipment, machinery all over the place. It's like they just dropped it wherever they felt like it, metal all over the floor" and it was like that all the time. She also testified that there was "garbage" outside the machine shop on the drive itself which she saw before going inside. Several photographs in the record show equipment and metal objects to the immediate left of driveway; some are on pallets and some are not. The plant services manager described this as something of a laydown area where parts that have been machined or are awaiting machining are stored. Wallace claimed that the photographs showed only a portion of the materials that were present on the night she fell. As much or more material had also been on the drive the previous evening when Wallace had made her rounds. The machine shop has lighting fixtures on the outside of the building, but the lightbulbs were missing on the night in question. Accordingly, Wallace left the truck's headlights on and used her flashlight to get to the doorway. She was in the machine shop for about fifteen minutes. She then exited the building and in her words:

> And as I was walking back to the truck, I heard a noise—a clinking noise off to the right. They'd been having thefts out at that area and out of the machine shop. So I turned with my flashlight to look that way, and I was still walking and I tripped over something. I was told it's a billet.[2]

While she was unsure of exactly what she tripped over, she had no reason to believe it was placed there while she was inside the machine shop. Wallace agreed that had she not directed the flashlight off to the side, she would not have tripped. She was seriously injured in the fall.

---

1. In its pleadings, AMV contends that it is presently a limited liability corporation known as ArelorMittal Vinton LLC.

2. A billet is described in the summary judgment record as a rectangular piece of metal used to make rebar, and also as a five and quarter-inch by five and quarter inch square piece of metal

For five years AMV had been told about the poor lighting and the need to clean up the area. For a time, the large door was left open and the lights inside left on to provide better outside lighting. That accommodation was later discontinued. In her words, these issues were "no secret" to the security guards.

Wallace's live petition alleged that she was an invitee on the premises. She claimed that she fell over a "metal object" which constituted a dangerous condition that AMV knew of, or should have known of, and failed to correct or warn. AMV moved for summary judgment asserting both traditional and no evidence grounds under TEX.R.CIV.P. 166a(b) and (i). AMV's traditional motion asserted four grounds: (1) Wallace was AMV's borrowed servant (also termed "special employer") and as a subscriber under the Texas Worker' Compensation Act, her exclusive remedy was for worker's compensation benefits; (2) the piece of metal did not pose an unreasonable risk of harm; (3) because Wallace was aware of the condition, AMV owed her no duty to make it safe or provide a warning; and (4) the condition was not the proximate cause of her injuries. The no evidence motion asserted the same grounds except that it omitted the borrowed servant defense. The trial court granted the traditional motion, but did not specify the grounds. In a single issue, Wallace challenges the summary judgment.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). AMV in part asserted a traditional summary judgment under TEX. R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment

as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Stated otherwise, AMV must conclusively negate one of the elements of Wallace's claim or establish as a matter of law all the elements of an affirmative defense. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.–El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. A genuine issue of material fact is raised when the non-movant produces more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). There is less than a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.–El Paso 2013, no pet.).

Wallace carries the burden of negating all possible grounds upon which the summary judgment could have been granted. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Ramirez v. First Liberty Ins. Corp.*, 458 S.W.3d 568, 571 (Tex.App.–El Paso 2014, no pet.). We begin with the duty question because we conclude it is dispositive.

## DUTIES OF A PREMISE OWNER

 Wallace contends that she was an invitee; AMV does not challenge that status on appeal. We accordingly limit our discussion of duty to that of a landowner to an invitee. "A landowner has a duty to exercise reasonable care to make the premises safe for invitees." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 202–03 (Tex. 2015). The court in *Austin* elaborated on this general duty statement when the invitee is aware of the dangerous condition on the property which causes the injury. Even though *Austin* involved a claim against an employer (the premises owner), by an employee (the invitee), the court made clear the duties which we describe below are the same as those owed by any premises owner to any invitee. *Id.* at 202.

 A landowner confronted with a dangerous condition on the property can satisfy the duty to an invitee in one of two ways. First, the landowner can eliminate or mitigate the dangerous condition such that it is no longer unreasonably dangerous. *Id.* at 203. Second, and subject to two exceptions that we note below, the landowner can also satisfy any duty by providing an adequate warning of the danger to the invitee. *Id.; see also Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 216 (Tex. 2008); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004). Ordinarily, the landowner need not do both, and can satisfy the duty by either correcting the condition, *or* pro-

viding an adequate warning leaving the unreasonably dangerous condition in place. *Austin*, 465 S.W.3d at 202–03; *see also State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996)(holding that landowner "had a duty to warn or make safe, but not both"); *see also TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009)(defendant could have satisfied its duty by either repairing pothole or providing adequate warning sign). Parsing the two alternative obligations together, the court describes the duty as requiring the landowner "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203.

This formulation of duty, which includes a consideration of the invitee's existing knowledge of the condition, grows out the underlying justification for the rule. The landowner is usually in a better position to know the property, and thus rectify or warn about any hidden hazards. *Austin*, 465 S.W.3d at 203. By the same token, when the hazard is already known to the invitee that rationale no longer applies. *Id.* In that situation, the hazard no longer poses an unreasonable risk "because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises." *Id.* at 203.

Applying this duty statement, the court has held in a number of cases that a premises owner does not owe a duty to warn when the invitee is already aware of the dangerous condition on the land. In *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 795 (Tex. 2008), for instance, an employee stepped over a loading cart to get into a cooler and when exiting the cooler, struck her shin on the same cart.

The court concluded the employer owed "no duty to warn of hazards that are commonly known or already appreciated by the employee." *Id.* at 795. In *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) a grocery store employee injured his hand when it became jammed in a customer's closing car door. The court concluded that "Kroger had no duty to warn Elwood of a danger known to all." *Id.* at 795. Similarly, in *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008) the employee of independent contractor claimed in part that the absence of hand rails on a loading ramp, which the employee had used daily for some time, was a property defect. The court concluded, however, that the lack of rails "was obviously a preexisting condition and obviously not a concealed hazard." *Id.* at 215. Likewise, in *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006) a premises occupier selling beehives on the property would not have been obligated to warn an independent contractor about the dangers of being stung, because that danger was obvious.

■ In *Austin*, the court resolved a certified question from the Fifth Circuit in a case arising out of an employee who slipped in the very hazard he was tasked with cleaning up. 465 S.W.3d at 198. The court concluded that in that circumstance, and applying the general rule as the court articulated it, the employer as the property owner did not owe premises owner duties to the employee. *Id.* at 217.[3]

The court in *Austin* noted two exceptions to the general rule. *Id.* at 204–06. Under these exceptions, neither a warning nor the obviousness of the danger are sufficient to make the premises reasonably safe as a matter of law. The first exception is termed the criminal activity exception,

and is exemplified by *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998). That case defines the obligations owed by a property owner to protect invitees from the criminal acts of third persons.

The second exception—the necessary-use exception—bears a more thorough explanation. This exception is derived from *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 513–14 (Tex. 1978). In that case, a guest visiting a friend at an apartment was required to descend down a dark common stairwell to exit the apartment. *Id.* Knowing the stairwell was unlit, the apartment resident secured a flashlight to try and light the way for the guest. *Id.* Despite the guest's efforts to proceed cautiously down the stairs (using the railing and the partial light of the flashlight), she stumbled and fell on an unevenly distributed stair. *Id.* A turn in the stairwell precluded the flashlight from illuminating the hazard. *Id.*

■ The court in *Parker* abolished the "no-duty" rule in premises liability cases, leaving arguments about the invitee's knowledge of the hazard to the issue of contributory negligence. *Id.* at 517. The court in *Austin*, however, concluded that many of its cases since *Parker* had applied a no duty analysis when the invitee was already aware of the risk. 465 S.W.3d at 207–08. Reconciling these cases, *Austin* describes *Parker* as an exception to the general rule which applies when: (1) it is necessary that the invitee use the dangerous premises; and (2) the landowner should have anticipated that the invitee would be unable to take measures to avoid the risk. *Id.* at 208. When this necessary-use exception applies, the invitee's "awareness of the risk does not relieve the land-

**3.** When, however, "the landowner is also an employer and the invitee is also its employee, this additional relationship may give rise to additional duties, such as a duty to provide necessary equipment, training, or supervision." *Id.* at 215.

owner's duty to make the premises safe, but it remains relevant to the issue of proportionate responsibility unless that defense is legally unavailable." *Id.*

On appeal, Wallace does not address *Parker*, either for its no duty proposition, or as an exception to the general rule that an invitee's knowledge of a risk negates the dangerousness of a condition.[4] As an exception to the general rule, it would be incumbent on Wallace to put forward some evidence for the exception once AMV presented evidence supporting its summary judgment under the general rule. *See Clear Creek Basin Authority*, 589 S.W.2d at 678–79 (describing non-movant's obligation to present to the trial court affirmative reasons to avoid movant's entitlement to summary judgment, and stating "[n]o longer must the movant negate all possible issues of law and fact that *could* be raised by the non-movant in the trial court but were not." [Emphasis in original].). Because Wallace has not urged this case falls under the *Parker* necessary-use exception, we will not endeavor to apply the exception either.

■ Acknowledging much of the Texas Supreme Court's jurisprudence on open and obvious premises conditions, Wallace counters that the tripping hazard around the machine shop was constantly changing, and was thus not "a static, non-changing" condition such as described in prior case law, but was more akin to a concealed danger. Wallace relies on two cases: *E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48 (Tex.App.–Houston [14th Dist.] 2014, pet. dism'd) and *Griffin v. Shell Oil Co.*, 401 S.W.3d 150, 160–61 (Tex.App.– Houston [1st Dist.] 2011, pet. denied). Neither case is helpful to her argument.

In *Roye*, an invitee on DuPont's property was inspecting piping around a pool of extremely hot condensate. The invitee was perched on a pallet next to the pool when the ground gave way, causing him to fall into the pool. The court rejected DuPont's argument that the pool itself was the open and obvious hazard. The actual premises defect was the subsoil near the ledge of the pool which gave way, and which was concealed to everyone. *Id.* at 59. In this case, because there was nothing about the clutter on the drive that was concealed, we find the case inapposite.

A closer case is *Griffin v. Shell Oil Co.*, 401 S.W.3d 150, 153 (Tex.App.–Houston [1st Dist.] 2011, pet. denied). There, a worker had to enter a dimly lit storage area which often had standing water and an ever changing collection of scrap. *Id.* at 152. On one occasion, he slipped in some water which was closer to the room's entrance than usual, causing him to trip over a pallet, and then grab for a stack of panels that fell on him. *Id.* at 154. The fall occurred just as he entered the room. *Id.* at 154. The court reversed a summary judgment in the property owner's favor. It reasoned that the property owner only showed that the plaintiff "was aware of the general dangers that existed in the storage room" but not the "specific defects [that] were ever-changing." *Id.* at 161.

In the record here, the amount of scrap in front of the machine shop also changed over time, but the record supports AMV's claim that Wallace knew about the obstacles as she first entered the machine shop on the night of the accident. She concedes that nothing changed in the fifteen minutes she was inside, until she came out and fell. She also conceded the same amount or more of scrap was in front of the machine

---

4. *Austin* was decided after the summary judgment was decided by the trial court, but before the briefs were filed in this court. Wallace cites neither *Austin* nor *Parker* in her briefing.

shop the night before. So while the amount of materials may have changed over time, it did not change in the time immediately preceding the fall, and she would have been aware of the materials there when she first traversed the area to get into the machine shop.

██ Once properly challenged by AMV, Wallace ultimately carried the burden to produce evidence of duty, and liability cannot be imposed if no duty exists. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence at issue. *Golden Spread Council, Inc. No. 562 of the Boy Scouts of America v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996). And AMV is liable only to the extent it owes, and then breaches, a legal duty to Wallace. *Moritz*, 257 S.W.3d at 217. We conclude that the summary judgment proofs establish that Wallace was aware of the materials on the ground, and accordingly AMV owed no duty to make them safe or warn her of what she already knew.

Because Wallace cannot overcome this independent ground for granting the summary judgment, we need not address the remaining possible grounds asserted in the motion for summary judgment. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Wallace's sole issue is overruled and we affirm the judgment issue below.