COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MARTIN RODRIGUEZ, | § | No. 08-17-00113-CV |
| Appellant, | § | Appeal from the |
| v. | § | 83rd District Court |
| CEMEX, INC., | § | of Pecos County, Texas |
| Appellee. | § | (TC# P-7295-83-CV) |
| | § | |

# **O P I N I O N**

Martin Rodriguez filed this premises liability suit against Cemex, Inc. (Cemex), alleging he was injured while working at a cement plant that was owned and operated by Cemex. In a traditional motion for summary judgment, Cemex alleged that Rodriguez lacked evidence establishing that Cemex owed him a duty of care given that he was injured while performing his work as an employee of an independent contractor. The trial court granted summary judgment in favor of Cemex. We reverse.

## I. FACTUAL BACKGROUND

### *The Parties' Relationship*

Cemex owns and operates a cement plant in Odessa, Texas, known as the Cemex-Odessa plant (hereinafter the "Plant"), which is open 24 hours a day, allowing approximately a hundred

tractor-trailer trucks to come onto the premises to fill up with cement every day.[1] Union Logistics frequented the plant as an independent contractor hired by Cemex and would send its own employees to fill and deliver loads of cement on behalf of Cemex's customers. Pursuant to its standard procedures, Cemex had trained Union Logistics' owner, Tony Franco,[2] on the Plant's operations, and in turn, Franco was responsible for training his own employees.[3]

### *The Plant's Operations*

At the time of Rodriguez's injury, the Plant had a dual nature tower where drivers filled their trucks with a variety of cement products. The tower consisted of two separate platforms suspended on each side, one to be used as an entrance to the filling area, and the other to be used as an exit. After entering the tower, the driver needed to exit his truck, lower the entrance platform onto the top of his truck, then walk onto the platform to open the hatch located on the top of his truck. After opening the hatch, the driver next raised the entrance platform back to its upright position and secured it into place.

Thereafter, the driver would move his truck to a position for loading cement into the hatch. After positioning his truck for loading, the driver would once again exit his truck to meet with Cemex employees to advise them of the type of cement needed. Thereafter, a Cemex employee known as a "bulk loader" would fill the load from a control room. Once the fill was complete, the driver would return to his vehicle to move it to the exit side of the platform, where he would be

---

[1] We take the facts from the parties' summary judgment evidence, recognizing that these facts have not yet been established at trial.

[2] The owner of Union Logistics is Narcisso Antonio Franco Estrella but he is referred to as Tony Franco throughout our record.

[3] At his deposition, Franco testified that he "work[ed]" for Cemex, and that 100 percent of his business was based on providing services to Cemex. Although Franco did not describe the exact nature of his relationship with Cemex, the parties' attorneys clarified their relationship at oral argument, with both parties agreeing that Union Logistics was an independent contractor performing work on Cemex's behalf.

2

required to lower the exit platform onto the top of his truck and use the platform to walk back to the hatch of his truck to close it. Once he closed the hatch, the driver then raised the exit platform back into its upright position, secured it into place, then returned to his truck to exit the Plant.

### *The Accident*

On May 11, 2012, the day of Rodriguez's accident, Union Logistics had hired Rodriguez to fill a load of cement at the Plant, and had also sent another employee, Alfredo Armendariz, to the Plant to fill a load in a separate truck.[4] While Rodriguez walked on the entrance side of the platform to open the hatch on his truck, Armendariz had already advanced to the exit side of the tower, and he was in the process of closing the hatch on his truck. After Armendariz lifted the exit platform off his truck, he failed to secure the platform in the upright position causing it to fall back onto his truck. Thereafter, Armendariz drove away with the exit platform on top of his truck, not aware that he dragged it with him, causing the entire tower to "move," "twist," and destabilize with motion. Due to the movement, Rodriguez's leg became wedged between the entrance platform and the top of his trailer, which crushed his ankle.

At the time of the accident, there were no Cemex employees immediately near the tower, and none witnessed the accident. However, after a Cemex employee heard screaming, he and another employee looked to the platform and observed that Rodriguez's leg was pinned by the platform; they assisted Rodriguez until EMS arrived to transport him to a nearby medical center.

Following Rodriguez's accident, upon the recommendation of Alton Ray Crumley, a supervisor at the Plant, Cemex implemented safety measures at the Plant to help prevent similar accidents from occurring in the future. For example, Cemex made the decision to only allow one

---

[4] Rodriguez also performed work for Roberto Bustamante, who at the time was an independent contractor working for Cemex. Bustamante owned the truck that Rodriguez was driving the day of the accident even though Union Logistics had arranged for Rodriguez's services that day.

3

truck at a time to use the tower. Then, signs were posted warning that only one truck at a time could use the tower. Later, Cemex redesigned its facilities. At the time of this suit, Cemex used a tower design that only allowed one truck to use the tower at a time, referred to as a "separate single access platform."

## II. PROCEDURAL BACKGROUND

Rodriguez filed a lawsuit against Union Logistics, Armendariz, and Cemex. In his claim against Cemex, Rodriguez alleged that Cemex had created a "premises defect" on its property, which was not open and obvious, and that Cemex had failed in its duty to eliminate the defect and/or to warn invitees of the dangerous condition. In his claim against Armendariz, Rodriguez alleged that Armendariz's negligence in failing to secure the platform in the upright position before exiting the Plant was the proximate cause of his injuries. In his claim against Union Logistics, Rodriguez alleged that it had failed to provide him with a safe work environment and failed to adequately train and supervise its employees. After the trial court granted Rodriguez's motion for partial summary judgment with respect to his claim against Armendariz, Rodriguez went to mediation with both Armendariz and Union Logistics, and settled with those two defendants for $20,000, leaving only his claim against Cemex pending.

### *Cemex's Motion for Summary Judgment*

Subsequently, Cemex filed a traditional motion for summary judgment contending that Rodriguez had no evidence to support its claim that Cemex owed him a duty of care that it had breached. In its motion, Cemex characterized Rodriguez as being an employee of an independent contractor arguing that a premises owner only owes a duty to an employee of an independent contractor on its premises to either rectify or warn the employee about a hidden defect the owner knew or should have known existed on its premises. Cemex argued that the "irrefutable summary

4

judgment evidence" established that there was no defect, "hidden or otherwise," on its premises that caused Rodriguez's injuries, and that instead, Armendariz's negligence was the sole cause of the accident.

In his response to Cemex's motion for summary judgment, Rodriguez argued that the hidden defect was the lurking danger posed by the dual use nature of the tower itself, and the fact that the tower could become unstable by the actions of one driver while another was using it. Rodriguez further argued that he had raised a genuine issue of fact regarding whether Cemex had "actual knowledge" of this allegedly dangerous condition on its property based on evidence that Cemex was aware that several prior incidents had occurred at the Plant during which the tower had become destabilized. Rodriguez attached two incident reports, documenting two other instances that occurred at the Plant in March and May of 2012, in which drivers had failed to secure the platform in the upright position, and had dragged the platform with them as they attempted to exit the Plant, one of which occurred the day before Rodriguez's accident. According to the reports, which Crumley filled out in both instances, no one was hurt and there was no structural damage to the platform, although the driver's truck involved in the incident of May 2012 had sustained property damage.

Rodriguez also attached excerpts from Crumley's deposition testimony, as well as that of another Cemex employee, Jeremy Joseph, who both testified about their knowledge of the prior incidents. In his deposition, Joseph testified that he believed it was fairly common for drivers to become "entangled with the platform," thereby causing the tower to become unstable, and that he believed such incidents occurred as often as every month, or at the least, every six months. In his deposition, Crumley also acknowledged that, although no one had been injured in the prior incidents, the platform appeared to have been damaged or bent from previous incidents of this

5

nature. In addition, both Crumley and Joseph acknowledged that they had been aware of the risk of injury posed by allowing two trucks to use the platform at the same time, and that it would have been safer to allow only one truck at a time to use the tower. Crumley further acknowledged Cemex could have taken "additional actions" to safeguard against the prospect of future injuries prior to the time of Rodriguez's accident.

Rodriguez argued that this evidence raised a material question of fact regarding whether Cemex was aware that it had created an "obvious risk of unreasonable harm" on its premises by allowing two drivers to use its platform at the same time.[5] He argued that, "[h]aving a metal platform weighing thousands of pounds spinning around poses an obvious risk of unreasonable harm," and that Cemex had failed to exercise reasonable care to reduce or eliminate that risk before Rodriguez's accident occurred.

### *The Trial Court's Judgment and Rodriguez's Motion for Rehearing*

After the trial court granted Cemex's motion for summary judgment, Rodriguez filed a "motion for reconsideration or new trial," attaching the same items of evidence described above to his motion.[6] In his motion, Rodriguez argued that Cemex owed him "multiple duties," such as the duty to provide a "safe workplace," and not just the duty to warn of known, hidden defects. He further argued that even if Cemex only owed him a duty with respect to known, hidden defects, he had presented sufficient summary judgment evidence to raise a fact question with respect to whether Cemex had breached that duty by failing to warn him about the danger the dual use

---

[5] During his deposition, Rodriguez primarily faulted Cemex for not having an employee on the platform to supervise the drivers as they used the facilities, contending that this could have helped prevent his accident.

[6] Rodriguez also filed his own motion for partial summary judgment with respect to his premises liability claim against Cemex, arguing that this same evidence established that Cemex "had actual or constructive knowledge of a condition on [its] premises" that posed an "unreasonable risk of harm," that Cemex did not exercise reasonable care to reduce or eliminate the risk of harm, and that this failure was the proximate cause of his injuries. The trial court denied that motion.

platform posed and failed to rectify that defect until after his accident occurred. At the hearing, the attorneys primarily argued over whether there was a known defect on the premises, and if so, whether it was hidden, or alternatively, whether it was open and obvious to Rodriguez at the time of his accident. Counsel for Rodriguez argued that prior incidents with the tower were known to Cemex, but not to Rodriguez. Rodriguez's counsel further argued that Rodriguez had no way of knowing about the prior incidents and/or about the danger the platform posed.

After holding a hearing on Rodriguez's motion, at which no new evidence was presented, the trial court denied Rodriguez's motion for reconsideration, and this appeal followed.

## DISCUSSION

On appeal, Rodriguez asserts two issues challenging the merits of the court's summary judgment ruling and a third issue challenging the court's subsequent denial of his motion for new trial. In Issue One, Rodriguez asserts that the court erred in granting Cemex's motion for summary judgment based on a no-duty defense that was abolished in *Parker v. Highland Park.*[7] In Issue Two, Rodriguez asserts that summary judgment evidence demonstrated the existence of a pre-existing, concealed defect on the premises. We construe these first two issues as challenging the court's ruling on whether Cemex owed Rodriguez a duty as a matter of law; and, if so, whether the evidence established a genuine issue of material fact on Cemex's breach of duty. As for Issue Three, Rodriguez argues that the trial court abused its direction in denying his motion for new trial in which he re-urged his opposition to the summary judgment. Because we believe that Cemex owed a duty to Rodriguez to either rectify or warn about known, concealed defects on its premises, and because we believe Rodriguez provided sufficient summary judgment evidence to raise a question of material fact for the jury to decide whether Cemex breached that duty, we agree that

---

[7] *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978).

7

the trial court erred in granting summary judgment. Given our conclusion, we do not reach Issue Three.

**Standard of Review**

A defendant moving for traditional summary judgment pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure must state the specific grounds for the motion and must negate at least one essential element of the plaintiff's cause of action. *Stierwalt v. FFE Transp. Services, Inc.,* 499 S.W.3d 181, 194 (Tex. App.—El Paso 2016, no pet.) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *see also Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002)); TEX. R. CIV. P. 166a(c). Once a motion is filed, the burden shifts to the non-movant to present evidence raising an issue of material fact as to the elements challenged. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). Although the nonmoving party is not required to marshal all its proof in response to a summary judgment motion, it must present countervailing evidence that raises a genuine fact issue on each of the challenged elements. *Stierwalt,* 499 S.W.3d at 194 (citing *Sw. Elec. Power Co.,* 73 S.W.3d at 215). In determining whether the nonmovant has raised an issue of fact, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Chance v. Elliot & Lillian, LLC*, 462 S.W.3d 276, 283 (Tex. App.—El Paso 2015, no pet.); *Terex Utilities v. Republic Intelligent Transp. Svc., Inc.*, 392 S.W.3d 340, 342 (Tex. App.—El Paso 2013, no pet.). The trial court must grant the motion unless the plaintiff raises a genuine issue of material fact on each challenged element. *Stierwalt,* 499 S.W.3d at 194 (citing *Hall v. RDSL Enters., LLC*, 426 S.W.3d 294, 300 (Tex. App.—Fort Worth 2014, pet. denied)); *see also Frost Nat. Bank v. Fernandez,* 315 S.W.3d 494, 509 (Tex. 2010) (if the

8

nonmovant does not raise a fact issue on any elements of a claim or defense, summary judgment is appropriate). We review a trial court's order granting summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc.,* 289 S.W.3d at 848 (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003)).

**ISSUES ONE AND TWO: Rodriguez Presented Sufficient Evidence to Raise a Question of Fact Regarding Whether Cemex Breached its Duty to Him**

*1. The Duty Owed to Rodriguez*

The threshold issue we must decide in resolving Rodriguez's appeal is the nature of the duty owed by Cemex to Rodriguez. Whether a duty exists is a question of law for the court to decide. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 209 (Tex. 2015); *Saucedo v. Horner,* 329 S.W.3d 825, 830 (Tex. App.—El Paso 2010, no pet.); *see also TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009); *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 217 (Tex. 2008). Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty. *Moritz,* 257 S.W.3d at 217 (citing *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex. 2001) ("The plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach."); *Abalos v. Oil Dev. Co. of Tex.,* 544 S.W.2d 627, 631 (Tex. 1976) ("[A]ny plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability.")). If no duty exists, liability cannot be imposed. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

The duty owed by a premises owner is determined by the status of the complaining party at the time and place of injury. *See Pay & Save, Inc. v. Martinez*, 452 S.W.3d 923, 926 (Tex. App.—El Paso 2014, pet. denied) (citing *Scott & White Mem'l Hosp. v. Fair,* 310 S.W.3d 411, 412 (Tex. 2010)); *see also Rosas v. Buddies' Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Gill v.*

*Rosas*, 821 S.W.2d 689, 691 (Tex. App.—El Paso 1991, no pet.). As set forth above, the parties agree that Rodriguez was the employee of an independent contractor that was hired by Cemex to come to its plant to fill and deliver loads to Cemex customers. The Supreme Court has held that a premises owner owes a duty to the employee of an independent contractor to either rectify or warn about concealed or hidden defects on the owner's premises about which the owner knew or should have known. *Moritz,* 257 S.W.3d at 216 ("But *Parker* abolished a certain kind of no-duty defense, not all duty questions whatsoever."); *see also Austin*, 465 S.W.3d at 202–03. This limited duty is the same duty that a premises owner owes to business invitees on the premises. *Wallace v. ArcelorMittal Vinton, Inc.,* 536 S.W.3d 19, 23 (Tex. App.—El Paso 2016, pet. denied) (citing *Austin*, 465 S.W.3d at 203).

Rodriguez further contends that Cemex owed a broader, more general duty to make the premises safe for him, and/or to provide him with a "safe workplace." We disagree. In *Moritz*, the Supreme Court held that a premises owner is liable to the employee of an independent contractor "*only* for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed. . . (emphasis added)." *Moritz*, 257 S.W.3d at 215. Further, although courts often refer to a premises owner's general duty to exercise reasonable care to make the premises safe for invitees, this duty has been defined more specifically as the duty "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Wallace,* 536 S.W.3d at 23 (citing *Austin,* 465 S.W.3d at 203); *see also Chappell v. Allen*, 414 S.W.3d 316, 323 (Tex. App.—El Paso 2013, no pet.) (citing *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex. 2000)); *see also Nabors Drilling, U.S.A., Inc*. v. *Escoto,* 288 S.W.3d 401, 412 (Tex. 2009); *Brookshire Grocery Co. v. Goss,* 262 S.W.3d 793, 794 (Tex. 2008); *Moritz,* 257 S.W.3d at 216;

10

*Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 651 (Tex. 2007); *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 295 (Tex. 2004).

Accordingly, we conclude that Cemex owed Rodriguez a duty to either rectify or warn him about unreasonably dangerous, hidden defects on its premises about which Cemex knew or should have known.

### 2. *Rodriguez's Burden on Summary Judgment*

Rodriguez further contends that once such a duty is established, the trial court should submit the matter to the jury to allow it to consider the relative negligence of both parties, applying principles of comparative negligence.

In *Moritz*, the Supreme Court rejected a similar argument, and held that in a summary judgment proceeding, a plaintiff seeking to establish the existence of a material issue of fact in a premises liability case has the burden to prove not only that a defendant landowner owed him a duty, but that the defendant *breached* that duty as part of its case in chief, as these are key elements of a plaintiff's claim. *Moritz*, 257 S.W.3d. at 216 (quoting *Dixon v. Van Waters & Rogers*, 682 S.W.2d 533, 534 (Tex. 1984)); *see also Wallace,* 536 S.W.3d at 26 (it was the plaintiff's burden on summary judgment to establish not only that a duty existed, but that the defendant breached that duty); *Chappell v. Allen,* 414 S.W.3d 316, 323 (Tex. App.—El Paso 2013, no pet.) (the threshold question in a premises liability case, as with any cause of action based on negligence, is the existence of and violation of a duty). As a premises owner may only breach its duty to the employee of an independent contractor if it failed to warn him about a concealed or hidden defect, it is the plaintiff's burden to come forward with evidence to establish that such a defect existed on the premises that caused his injuries; if the plaintiff does not meet this burden, the trial court may properly enter summary judgment in favor of the defendant. *Moritz*, 257 S.W.3d. at 216-18 (trial

11

court properly entered summary judgment in favor of premises owner where plaintiff, an employee of an independent contractor, claimed that he was injured in part because a ramp at the owner's warehouse did not contain handrails, which the Court determined, as a matter of law, was not a concealed defect, and was instead, an open and obvious condition).

Accordingly, we conclude that under *Moritz*, Rodriguez was required to come forward with evidence to establish that Cemex breached its duty to either rectify or warn him about unreasonably dangerous, hidden defects on its premises about which Cemex knew or should have known.[8] We first consider whether the evidence raised a material question of fact on the issue of whether a dangerous condition existed at the Plant about which Cemex knew or should have known, and second, whether the evidence raised a question of fact on the issue of whether any such condition was concealed, or conversely whether the danger was open and obvious as a matter of law.

### 3. Evidence of the Prior Incidents at the Plant Constituted Sufficient Summary Judgment Evidence that an Allegedly Dangerous Condition Existed at the Plant

Rodriguez argues that he came forward with sufficient evidence to raise a material issue of fact on the question of whether Cemex knew or should have known that a dangerous condition existed on its premises, pointing to the evidence he presented of the previous incidents that had occurred at the Plant in which the tower had become destabilized when drivers hit the tower. Rodriguez further points to the deposition testimony of the two Cemex employees who testified

---

[8] To the extent that Cemex asks us to decline to follow the Court's holding in *Moritz*, this we cannot do. To date, the Supreme Court has not overruled its holding in *Moritz*, and instead has on more than one occasion cited *Moritz* for the proposition that a landowner only owes employees of independent contractors, as well as invitees on its premises, a duty to "make safe or warn of unreasonably dangerous conditions that are not open and obvious or otherwise known to the invitee." *See, e.g., Kroger,* 465 S.W.3d at 203; *see also Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 313 (Tex. 2009) (citing *Moritz* for the general proposition that a "premises owner owes no duty to warn an independent contractor's employees of an open and obvious danger"). As an intermediate court of appeals, we are bound to apply the controlling law as interpreted by this state's highest court. *See Lubbock County, Texas v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex. 2002); *see also ReadyOne Indus., Inc. v. Casillas,* 487 S.W.3d 254, 263 (Tex. App.—El Paso 2015, no pet.).

12

that they were aware of the prior incidents, and that they were aware of the potential for injury that could result from such incidents. Rodriguez contends that it was the tower's known propensity to become unstable that posed an obvious and unreasonable risk of danger to its users, and that Cemex was admittedly aware of that danger due to its knowledge of the prior incidents in which the tower became unstable.

Cemex's response in part centers on the argument that all of the prior incidents—as well as Rodriguez's accident—were caused solely by the negligence or "inattention" of the drivers using the platform, rather than a defect in the platform itself, or in other words, the sole cause of these incidents was "independent contractor negligence." According to Cemex, the dual use and design of the tower played no role in causing Rodriguez's accident or the prior incidents, and therefore cannot be considered a dangerous condition on the premises for purposes of establishing this element of Rodriguez's claim. We disagree.

As a preliminary matter, we note that although neither party discusses the issue of causation in any depth, causation is an essential element of a premises defect claim, and requires a showing that a hazardous condition on the property was both the cause in fact of the plaintiff's injuries, and that such injuries were foreseeable. *See Brown v. State Dept. of Transp.*, 80 S.W.3d 594, 600 (Tex. App.—Corpus Christi 2000), *aff'd sub nom. County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) (citing *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex. 1995); *Wal–Mart Stores, Inc. v. Sholl,* 990 S.W.2d 412, 416 (Tex. App.—Corpus Christi 1999, no pet.)). Cause in fact requires a showing that the hazardous condition was a substantial factor in bringing about the plaintiff's injuries, i.e., that without the hazardous condition, the plaintiff's injuries would not have occurred. *Id.* (citing *Sholl,* 990 S.W.2d at 417); *see also Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 223 (Tex. 1988) (cause in fact means that the negligent act at issue was a substantial

factor in producing the injury, and without such negligence no harm would have resulted). Foreseeability, on the other hand, means that the plaintiff's injuries that resulted from the hazardous condition were of the "type that might reasonably have been anticipated" by the defendant premises owner. *See Brown*, 80 S.W.3d at 600 (citing *Sholl,* 990 S.W.2d at 417). While foreseeability means that the defendant, as a person of reasonable or ordinary intelligence, should have anticipated the potential for injury to others, it does not require that the defendant should have foreseen the particular accident or injury which in fact occurs, or that he must anticipate exactly how the injury might result from a particular dangerous situation. *Brown*, 764 S.W.2d at 223–24. All that is required to satisfy the foreseeability requirement is that the plaintiff's injury be of such a general character that the defendant might have reasonably anticipated that the injuries could occur. *Id*. at 224.

In the present case, we find that Rodriguez's summary judgment evidence raised a genuine question of fact on the issue of whether the dual nature of the platform could be considered a proximate cause of Rodriguez's injuries. In reaching this conclusion, we note that there can be more than one proximate cause of a plaintiff's injuries, such as when concurrent causes align in an unbroken chain to contribute to an accident.[9] *See, e.g*., *Stanfield v. Neubaum*, 494 S.W.3d 90, 97–98 (Tex. 2016); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987); *see also Noblin v. EE Ranches, Inc.,* 296 S.W.3d 773, 777 (Tex. App.—El Paso 2009, no pet.) (as a general rule of concurrent causation, all actors whose negligence contribute to an injury are liable for the injury) (citing *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992)). In the present case, a jury

---

[9] We note that a concurring cause "concurs with the continuing and co-operating original negligence in working the injury," leaving the causal connection between the defendant's negligence and the plaintiff's harm intact. *Neubaum*, 494 S.W.3d at 98. However, the doctrine of concurring causes does not apply when there is a break in the chain of causation, such as when there is a new and independent, or superseding, cause, which intervenes between the original wrong and final injury. *Id.* at 97.

14

could reasonably conclude that two factors, i.e., driver negligence and the tendency of the dual use nature of the tower to become unstable, were concurrent proximate causes of Rodriguez's accident. Rodriguez would not have been injured but for the combination of Armendariz's negligence, together with the instability of the platform, and therefore both factors can be considered as the cause in fact of Rodriguez's injuries.

Further, we conclude that the summary judgment evidence was sufficient to raise a genuine question of fact on the issue of whether Rodriguez's injuries were foreseeable. As set forth above, foreseeability is required to establish proximate cause, but it is also a key part of the analysis for determining whether a dangerous condition existed on the property for purposes of bringing a premises defect case. As the Supreme Court has recognized, in order to impose liability on a landowner in a premises defect case, a condition on its property must pose an "unreasonable risk of harm," which in turn exists "when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Brown*, 80 S.W.3d at 556 (citing *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 754 (Tex. 1970)); *accord City of El Paso v. Viel*, 523 S.W.3d 876, 895 (Tex. App.—El Paso 2017, no pet.).

Under this approach, Texas courts have concluded that in certain situations, a jury may find that a reasonably prudent premises owner should have foreseen that a harmful event might occur on its premises due to a potentially dangerous condition, even if the event, in part, occurred as the result of another individual's conduct, whether negligent or not. This principle is illustrated in our sister court's holding in *Brown*, 80 S.W.3d at 600. In that case, the County had created a potentially dangerous condition on its roadway, due to the lack of lighting on a dangerous stretch of the road, which caused the plaintiff to lose control of his vehicle. *Brown,* 80 S.W.3d at 600. As

15

the plaintiff exited his vehicle, he was struck and killed by another driver who also lost control of his vehicle shortly thereafter, and who was unable to see the plaintiff due to the darkened conditions. *Id*. at 597. In that case, the court held that the failure to maintain adequate lighting on the roadway constituted a premises defect, as it created "an environment in which accidents were more likely to occur." *Id*. at 600. Therefore, although the County might not have been able to foresee that a third-party's conduct would combine with the dangerous conditions on the roadway to cause the plaintiff's death, the court nevertheless held that the County could be held liable as it was nevertheless aware of the general potential for danger that existed on its roadway. *Id.* at 600-601; *see also Walmart Stores, Inc. v. Cantu,* No. 04-02-00094-CV, 2003 WL 21156840, at \*1-2 (Tex. App.—San Antonio May 21, 2003, no pet.) (not designated for publication) (where a ten-year-old child removed a bicycle from the hook on a display rack and began to ride the bicycle around the store, ultimately striking the plaintiff's leg, the court concluded that the plaintiff's case sounded in premises liability, as the store had allowed an unsafe condition to exist on its premises by, among other things, failing to take appropriate action to prevent customers, including children, from taking bikes off the rack and failing to implement procedures to keep children from riding bikes in the store).

Similarly, numerous Texas courts have held that when a premises owner is aware that its invitees are using a structure on its premises in a negligent manner, which in turn creates a foreseeable risk of harm to others who are also using the premises, the owner may be found liable under a premises liability theory to allow the structure to remain on its premises despite being aware of the danger its use created. For example, in *Corbin v. Safeway Stores, Inc*., 648 S.W.2d 292 (Tex. 1983), a store had a display bin containing grapes, which was configured in such a way that customers would often knock the grapes to the ground, creating a slipping danger to other

16

customers. *Id*. at 294. The plaintiff in that case did in fact slip on a grape that was on the floor, thereby injuring himself, and sued the store owner on a premises liability theory. *Id*. At trial, the plaintiff presented evidence that the store had been generally aware of the danger that the bin created due to the fact that grapes often fell to the ground, creating a "unusually hazardous and continual source of slippery material" on the floor on which customers could slip. *Id*. In finding this evidence to be sufficient to impose liability on the store owner, the Supreme Court held that the store's liability was dependent on "its knowledge of store conditions posing risks to customers and the failure to act reasonably in response to those risks . . . ." *Id.* at 297–98. Further, the Court recognized that the store owner did not have to be aware of the exact incident that led to the plaintiff's injuries, i.e., it did not need to be aware of the specific object that was on the floor at the time of the plaintiff's accident, only that it was, or should have been, aware of the generally dangerous condition that existed on its premises. *Id*. at 298; *see also Nat'l Convenience Stores, Inc. v. Erevia*, 73 S.W.3d 518, 522–23 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (court affirmed judgment in favor of plaintiff store owner in premises liability case where evidence presented at trial supported a finding that owner was aware that customers were retrieving soda bottles stored in a barrel in such a manner that it caused ice to be spilled onto the floor, thereby causing a slipping danger to other customers); *May v. Wal-Mart Stores, Inc.,* No. CIV.A.3:94-CV-2810-P, 1997 WL 181537, at *3 (N.D. Tex. Apr. 7, 1997) (court denied defendant's motion for summary judgment in premises liability case, where the summary judgment evidence raised a question of fact regarding the defendant's store owner's liability where it was aware that its display of fishing lures projected into the aisle walkway, causing shoppers to knock or kick them onto the ground, thereby creating the danger to other shoppers).

As set forth above, Rodriguez presented evidence that Cemex was aware of a generally dangerous condition on its premises based on the prior incidents that had occurred at the Plant in which the tower had become unstable, and that they were admittedly aware that the instability of the tower posed a risk of injury to its users. In particular, both Crumley and Joseph acknowledged in their deposition testimony that they had been aware of the risk of injury posed by allowing two trucks to use the platform at the same time, and that it would have been safer to allow only one truck at a time to use the tower. Further, despite this knowledge, Cemex continued to operate the tower in the same manner, providing no warning to its users and taking no precautions to ensure that it was used in a safer manner until after Rodriguez's accident occurred.

Cemex argues, however, that these prior incidents only constituted a "handful" of cases, and that "tens of thousands" of independent contractors had safely utilized the platform over the years. In addition, Cemex finds it significant that not all of the prior incidents happened in the same way as Rodriguez's accident occurred, i.e., by drivers failing to secure the platform, and that instead, some of the prior accidents occurred when drivers struck the platform. Cemex appears to believe that because of the limited number of prior incidents and the fact that some of them occurred in a different manner, this should preclude a finding that a defect existed at the Plant and/or that there was a condition at the Plant that posed a foreseeable risk of harm to its users. We disagree with both arguments.

We find it insignificant that not all the accidents occurred in the exact same way. As set forth above, the Supreme Court has recognized that in order to establish the element of "foreseeability" in a premises case, it is sufficient if the evidence demonstrates that a "general danger" was foreseeable, and that the premises owner need not anticipate the exact manner in which an injury might occur. *See, e.g., Brown*, 80 S.W.3d at 556 (citing *Walker v. Harris,* 924

18

S.W.2d 375, 377 (Tex. 1996)). Thus, for premises defect purposes, a condition may be considered defective when there is a "'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some *similar* event as likely to happen (emphasis added).'" *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017) (quoting *Brown*, 80 S.W.3d at 556; *see also Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 754 (Tex. 1970); *accord Wyatt v. Furr's Supermarkets, Inc.*, 908 S.W.2d 266, 269 (Tex. App.—El Paso 1995, writ denied).

In the present case, the prior incidents were all of a similar nature, all involving situations in which the platform became unstable due to driver inattention. The fact that the incidents may have occurred in slightly different ways does not negate the fact that these prior incidents all caused the platform to become unstable, thereby creating a risk that other drivers using the platform at the same time could have been injured. As such, this evidence supported a finding that a foreseeable risk of injury existed to users of the dual use platform as it existed at the time of Rodriguez's accident.

In addition, we believe that Rodriguez presented evidence of a sufficient number of prior incidents occurring at the Plant to satisfy this foreseeability factor. While the absence of any prior reports may support a finding that a premises owner did not have knowledge of a dangerous condition on its premises or that an injury was not foreseeable, we know of no cases imposing a requirement that a certain number of reports must have been made in order to support such a finding. *See generally Brinson Ford, Inc. v. Alger,* 228 S.W.3d 161, 162 (Tex. 2007) (holding as matter of law no actual knowledge when over ten–year period no customer visiting car dealership had been injured by allegedly dangerous ramp, nor had dealership received any complaints about ramp's safety); *Univ. of Texas-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (evidence

demonstrated that the defendant was not aware of any incidents of pedestrians tripping on water hoses on the campus in the past five years). Instead, in determining whether a plaintiff has a valid premises liability case, courts generally consider whether the premises owner has previously received reports of similar incidents occurring on the owner's property in making this determination, and whether those incidents occurred close in time to the plaintiff's injuries.[10] *See, e.g., State v. Shumake,* 199 S.W.3d 279, 281 (Tex. 2006) (evidence that defendant had received three reports of similar incidents of near-drownings on its premises supported the plaintiff's premises liability claim); *see also City of El Paso v. Collins*, 483 S.W.3d 742, 751–52 (Tex. App.— El Paso 2016, no pet.) (plaintiffs' pleadings were sufficient to allege a valid premises liability claim where the plaintiffs alleged that the City had received prior reports of other incidents involving children who were placed in danger at the pool due to these same dangerous conditions, which were "similar in nature or close in time" to the victim's accident).

As set forth above, Rodriguez presented evidence that Cemex was aware that there had been multiple past incidents at the Plant, occurring as often as once a month, in which driver inattention caused the platform to become unstable, at least two of which occurred in the two-month period before Rodriguez's accident. Although no one was hurt in those prior incidents, even Cemex's own employees testified that it was foreseeable that harm or injury could eventually befall a driver using the tower under these circumstances, and that it failed to take any action to rectify the danger until after Rodriguez's accident. Therefore, we conclude that the evidence of the prior incidents was sufficient to raise a question of fact for the jury regarding whether Cemex knew or should have known that the design and/or the manner in which it was using the tower

---

[10] We note that most of the cases involve the question of whether the premises owner knew or should have known that a dangerous condition existed on its premises. However, the question of whether an injury was foreseeable involves the same considerations.

constituted a danger to its users, and that it was foreseeable that a user could suffer injury as a result thereof. *See generally Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex. 1990) (recognizing that before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm or injury would eventually befall a victim); *see also Pitts v. Winkler County*, 351 S.W.3d 564, 573 (Tex. App.—El Paso 2011, no pet.) (whether a condition poses an unreasonable risk of harm in a premises defect case is ordinarily a question of fact).

### *4. The Significance of Rodriguez's Deposition Testimony*

Cemex also contends that, despite the evidence of the prior incidents, the trial court properly granted summary judgment because Rodriguez allegedly admitted in his deposition testimony, as did his employer, Tony Franco, that there was no defect at the Plant, whether hidden or otherwise. Cemex then concludes that this deposition testimony precludes a jury finding that a dangerous condition did in fact exist on the premises. We disagree with both Cemex's characterization of the deposition testimony, as well as its conclusion.

During their depositions, Franco and Rodriguez were both asked if they were aware of any defects with respect to the tower on the day of Rodriguez's accident. Cemex finds it significant that neither Franco nor Rodriguez were able to point to anything that was broken or defective on the platform on the day of Rodriguez's accident, and that instead, they testified that the platform appeared to be operating as intended on the date of the injury. Rodriguez's theory of liability, however, was not based on the allegation that the platform was broken, and was instead based on the claim that it was the design and manner in which Cemex routinely utilized the platform prior to his accident, i.e., by allowing two drivers to utilize the tower at the same time, which constituted

21

the dangerous condition.[11]  As explained above, when the design of a structure on a property constitutes a foreseeable and unreasonable danger to its users, this is sufficient to support a claim that a dangerous condition existed on the premises.  *See generally Wyckoff v. George C. Fuller Contracting Co.,* 357 S.W.3d 157, 163 (Tex. App.—Dallas 2011, no pet.) (plaintiff's contention that she was injured by defects in the design of a stairway constituted a valid premises liability claim).  We therefore conclude that Rodriguez's deposition testimony did not contradict his claim or his theory of liability.

### 5.  *A Jury Question Remained on the Issue of Whether the Dangerous Condition at the Plant was Open and Obvious*

And finally, the parties debate over whether the alleged defect on the premises was open and obvious, or whether it was a concealed defect for which Cemex had the duty to either rectify or provide a warning.  Cemex contends that the summary judgment evidence established that any defect on the premises was not concealed from Rodriguez, pointing out that Rodriguez himself testified at his deposition that he was aware of how the platform operated, and that he was an experienced driver who had used this and other similar platforms in the past.  Cemex also points out that Rodriguez had been to the Plant approximately 20 times prior to his accident in the two weeks leading up to his accident, and was therefore presumably aware of the "dangers associated" with working on the platform.  Cemex therefore concludes that this established that the potential danger posed by the platform was or should have been "open and obvious" to Rodriguez, and that it therefore owed no duty to Rodriguez to warn of any such potential danger.  We disagree.

---

[11] In fact, Franco indirectly addressed the existence of this danger at his deposition by describing the manner of its use before and after the accident.  At the time of the accident, two drivers were allowed on the tower at the same time; afterward, Cemex changed the manner of its use to restrict the tower to only one driver at a time.

As a preliminary matter, we recognize that in some instances, regardless of whether a plaintiff had actual knowledge of a danger, a court may nevertheless find that a danger was open and obvious, as a matter of law. For example, a danger may be said to be open and obvious, as a matter of law, when a plaintiff is injured while working in an inherently dangerous environment, where the danger posed would have been obvious to anyone taking on the task. *See, e.g.*, *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007) (danger posed to an employee who was injured while cleaning out a rotating drum on a cement truck was open and obvious); *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006) (owner of premises where beehives were kept had no duty to warn independent contractor's employees about being stung, since danger was obvious). Similarly, when an employee is working in an area without certain safety equipment and the lack of such equipment is apparent, common sense also dictates that in most instances, the dangers of doing so will be open and obvious as well. *See, e.g., Moritz*, 257 S.W.3d at 218 (landowner owed no duty to warn independent contactor's employee of the danger of using a ramp that had no handrails where such danger was open and obvious); *Hernandez v. Hammond Homes, Ltd.,* 345 S.W.3d 150, 156 (Tex. App.—Dallas 2011, pet. denied) (the danger of falling and the lack of fall protection, such as a safety-rope system or scaffolding, was an open and obvious defect, not a concealed defect); *see also Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 569 (Tex. 2007) (danger associated with using a ladder to climb over a lift gate was determined to be common and obvious).

However, we do not find this to be the case in Rodriguez's situation, as we cannot say conclusively that a driver in Rodriguez's position would have appreciated the danger posed by the dual use nature of the tower. The mere fact that Rodriguez may have understood how the platform generally operated did not conclusively establish that he understood the potential danger posed by

23

its use, i.e., that the entire tower could become unstable when another driver was using it, thereby creating a danger to him. In particular, there is nothing in the record to suggest that Rodriguez was aware of the prior incidents in which drivers had become entangled with the platform and/or had dragged the platform with them, or of the property damaged caused by such incidents. As Cemex recognizes, Rodriguez's first trip to the plant was only two weeks before his accident, and there is nothing in the record to suggest that during those two weeks, he personally witnessed any incidents of this nature, or that he had been told that any such incidents had previously occurred. Moreover, as set forth above, the record indicates that there were no warning signs at the Plant cautioning drivers about the possibility that the tower could become unstable in the event of an accident, or warning them that only one driver at a time should use the tower due to this possibility. As well, Cemex admitted that there were no Cemex employees in the area of the tower at the time of the accident, who could have provided Rodriguez with a warning, or otherwise helped him avoid the dangers posed by the dual use nature of the tower.

We therefore conclude that the summary judgment record did not conclusively establish that Rodriguez had actual knowledge of the dangers posed by the dual nature design and use of the tower, or that a reasonable person in his position would have appreciated the potential danger that it posed. Viewing the evidence in the light most favorable to Rodriguez, as we must, we cannot conclude that the danger posed by the tower was open and obvious as a matter of law, and instead, we conclude that a question of fact remained on that issue for a jury to resolve. Accordingly, we sustain Issue One and Issue Two.

## CONCLUSION

24

We conclude that the trial court erred in granting summary judgment in Cemex's favor on Rodriguez's premises liability claim, and we therefore reverse the trial court's granting of summary judgment and remand for further proceedings in accordance with our opinion.[12]


GINA M. PALAFOX, Justice

July 10, 2019

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

---

[12] In light of our determination that the trial court erred in granting summary judgment, we need not address Rodriguez's argument set forth in Issue Three that the trial court erred in denying his motion for new trial.