**NATIONAL CONVENIENCE STORES, INC., Appellant,**

v.

**Angela EREVIA, Appellee.**

**No. 01–00–01281–CV.**

Court of Appeals of Texas, Houston [1st Dist.].

April 4, 2002.

Rehearing Overruled May 10, 2002.

---

4. *Miranda* applies only to statements made during custodial interrogation. *Miranda,* 384

U.S. at 444, 86 S.Ct. at 1612.

Jeffrey Patrick Murphrey, Tekell, Book, Matthews & Limmer, LLP, Houston, for Appellant.

Leslie Werner de Soliz, Brown & Associates, Victoria, for Appellee.

Panel consists of Justices WILSON, JENNINGS, and DUGGAN.*

## OPINION

LEE DUGGAN, JR., Justice.**

A jury awarded appellee, Angela Erevia, $11,000 in actual damages in her premises liability action against appellant, National Convenience Stores ("NCS"). In a single point of error, NCS contends that no legally or factually sufficient evidence was presented to show that it had knowledge of the dangerous condition. We affirm.

### Background

Erevia and her mother-in-law entered the Stop–N–Go convenience store in Old Ocean on July 7, 1997, to purchase cold drinks. Erevia filled a cup with ice and a soft drink and was walking towards her mother-in-law when she slipped near a barrel-type display that contained ice and drinks. Erevia complained of injuries to her knee and back as a result of the fall.

Erevia did not see what she slipped on before falling, but testified that she fell into a large puddle of water. Her iced drink also spilled in the fall. Her mother-in-law testified that she had noticed a puddle and walked around it, but she did not warn Erevia or the store clerk. On the stand, Erevia's mother-in-law described the puddle as containing only water, but in prior statements she had mentioned both ice and water. The store clerk stated that she swept up only ice, not water. Although the store had video cameras in place, the tape did not directly show the fall or any water and/or ice on the floor.

It is undisputed that there were no mats or warning signs in place around the barrel-type display. The display was approximately four feet tall and resembled a Coca Cola bottle. Customers could retrieve a drink by lifting a lid on top of the display, reaching inside, and pulling out a beverage.

The store manager testified that there was a heightened concern about ice and water near iced-barrel displays. Erevia introduced the store's Safety and Security Workbook ("safety workbook") that instructed employees to place a safety absorbent mat under each barrel to absorb moisture. According to the manager, the employees tried to keep watch over the area and clean up any ice or water that spilled, but the store had no mats that could be placed under the barrels. She further testified that there were no leaks in the display either before or after the incident.

### Standards of Review

In its single point of error, NCS claims the evidence is legally and factually insufficient to support the judgment because there was no evidence presented to establish that NCS had actual or constructive knowledge of a condition posing an unreasonable risk of harm. In reviewing a

* The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

** The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

no evidence point, we must view the evidence in a light which tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If more than a scintilla of evidence exists, it is legally sufficient. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). To rise above a scintilla, the evidence offered to prove a vital fact must do more than create a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). In determining legal sufficiency, we consider whether the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994).

When considering a factual sufficiency challenge to a jury verdict, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–407 (Tex.1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; see Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). A court of appeals is not a fact finder. Accordingly, we may not pass upon the credibility of witnesses or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Ellis,* 971 S.W.2d at 407; *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986).

### Analysis

The elements of a premises liability slip-and-fall action are well established. The plaintiff must show:

(1) actual or constructive knowledge of a condition on the premises by the owner or occupier;

(2) that the condition posed an unreasonable risk of harm;

(3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and

(4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000) (citing numerous cases).

This case turns on whether the dangerous condition was the water on the floor or the iced barrel itself, without any protective mats placed around it. NCS notes that there was no evidence suggesting that the clerk had prior knowledge of the puddle on the floor.[1] Further, it argues, there was no evidence demonstrating the existence of the puddle for a sufficiently long period of time to establish NCS's constructive knowledge. Erevia effectively concedes that she did not present evidence to establish the store's knowledge of this *particular* puddle, but she argues that sufficient evidence, namely the manager's testimony and the safety workbook, was admitted to allow the jury to find that the iced barrel itself was a dangerous condition of which the company was aware.

Before discussing whether the barrel itself was a dangerous condition, we address NCS's claim, first raised in its reply brief, that the characterization of the barrel itself as a dangerous condition is outside the pleadings. Erevia's original petition stated, "Defendants ... knew or reasonably should have known of the unreasonably dangerous condition and neither corrected nor warned the Plaintiff.

---

1. We note that the parties disputed whether water, ice alone, or a combination of water and ice was on the floor. However, because the case does not turn on this distinction, we will refer to this condition as the "puddle" for the sake of simplicity.

Specifically, Defendants knew or should have known of the water that had been leaking from an iced tub containing beer within the Defendant's premises." NCS contends that the petition identified only *the water* as the dangerous condition. However, Erevia focused on the barrel itself as a known danger in her opening statement, introduced the safety workbook with it instructions on mats, examined the store manager regarding store procedures and the safety problems associated with iced barrels, and argued extensively in closing that the barrel was a known hazardous condition in the store. At no time did NCS object that any of this was outside the pleadings. Thus, this theory, if not adequately raised in the pleadings, was tried by consent. A party who allows an issue to be tried by consent, and who fails to raise the lack of a pleading before submission of the case, cannot later raise the pleading deficiency for the first time on appeal. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991).

On the merits of the claim, a decision as to whether the iced barrel itself constituted a dangerous condition requires a review of the Texas Supreme Court's binding decisions in slip-and-fall cases. NCS asserts the scenario is controlled by *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218 (Tex.1999) (per curiam). Erevia, on the other hand, contends the case is controlled by *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983).

In *Corbin*, the supreme court established that a self-service display could itself be a dangerous condition, and a storeowner could be liable "even in the absence of evidence showing the storeowner's actual or constructive knowledge of the presence on the floor of the specific object causing the fall." *Corbin*, 648 S.W.2d at 295. The self-service display at issue there held green grapes in an "open, slant-ed bin above a green linoleum tile floor." *Id.* at 296. Safeway's policy was to keep large non-skid, non-slip walk-off mats in front of the grape display, but the plaintiff testified that he saw no mat when he slipped and fell on a grape. *Id.* at 294. Erevia argues that the iced barrel is analogous to the *Corbin* grape display, and she need not show that the store had knowledge of the particular puddle in question.

However, the supreme court has since made it clear that, as a matter of law, "the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm." *Resendez*, 988 S.W.2d at 219. In *Resendez*, a grocery store had loose grapes available for sampling in a bowl that was "level, sitting on ice and recessed about five inches below the tables (sic) surface. Each display table had a three-inch railing around its edges. The floor of the entire produce section was a non-skid surface and floor mats were in place around the display tables. There were also warning cones near the grape displays." *Id.* at 218–19. The court noted, "In *Corbin*, there was more evidence than the mere existence of a display. It was the manner in which Safeway displayed the grapes—in a slanted bin over a linoleum tile floor with no protective floor mat—that created an unreasonable risk of customer falls from grapes falling on the floor." *Id.* at 219. NCS contends that because the barrel display was lidded and recessed, so that customers had to reach down into it to retrieve a drink, it was analogous to the grape display in *Resendez*, rather than that in *Corbin*. Thus, its mere presence would not put the store on notice about a dangerous condition.

■ *Resendez* is readily distinguishable from the case before us. Again, the clear holding of *Resendez* was that "the

mere fact that a store has a customer sampling display cannot, *without more,* be evidence of a condition on the premises that poses an unreasonable risk of harm." *Resendez,* 988 S.W.2d at 219 (emphasis added). Here, however, there is much *more* than the mere presence of a self-service display. The store manager testified that water on floors was recognized as a hazard because it endangered the safety of employees and customers and potentially exposed the company to lawsuits. Further, she testified that ice could spill out when drinks were removed from barrels; that many drinks were sold from these type displays; and that there was a heightened concern about water and ice around iced barrels. Erevia also highlighted the company safety workbook's instructions that absorbent mats should be placed under iced barrels. We find that these added circumstances remove the present case from the direct holding of *Resendez* and make the situation very similar to that in *Corbin.*

In 1992, while summarizing how the knowledge requirement in *Corbin* was met, the supreme court stated, "Safeway did not have to know that a particular grape was on the floor at a particular time because it knew that the grapes would be on the floor due to the nature of the display." *Keetch v. Kroger Co.,* 845 S.W.2d 262, 265 (Tex.1992). More recently the supreme court has said, "The grape display in *Corbin* allowed grapes to fall on the floor throughout each day and had no mat to protect customers from slipping. The display constituted a dangerous condition

from the moment it was used." *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex.2000). Here, the jury could infer from the manager's testimony that ice falling from iced barrels was a common problem associated with the nature of the display. Combining this with the company policy requiring mats under such displays,[2] the jury could rightly decide that NCS had knowledge of a condition that posed an unreasonable risk of harm. Thus, the evidence was legally and factually sufficient.

We overrule NCS's sole point of error.

We affirm the judgment.

---

**2.** In *Corbin,* the supreme court noted that it was not penalizing Safeway for its diligence in instituting the use of mats as a company-wide safety measure. *Corbin,* 648 S.W.2d at 297–98. The court stated, "If reasonable store conduct includes the use of mats or other floor coverings or even warnings in front of a particular display, then Safeway

may be held liable for not using them, regardless of whether company policy requires them." *Id.* at 298. Likewise, we note that NCS's failure to use safety mats under these circumstances, not its company policy, is key to its liability; however, the safety workbook does help to demonstrate NCS's actual knowledge of this dangerous condition.