IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0408
════════════
 
Brookshire Grocery Company, 

d/b/a Brookshire Food Stores, 
Petitioner
 
v.
 
Mary Francis Taylor, 
Respondent
 
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Sixth District of 
Texas
════════════════════════════════════════════════════
                                                                              

Justice O’Neill, joined by Justice Medina, dissenting.
The Court 
concludes Brookshire could be liable for injury caused by an individual ice cube 
on an unmatted tile floor next to a drink dispenser, but as a matter of law 
cannot be liable for the manner of display that regularly caused ice to fall 
there. While I agree with the Court that Taylor presented no evidence Brookshire 
knew that the particular cube upon which Taylor slipped was on the floor and 
thus liability could not be imposed on that basis, I believe Taylor presented 
some evidence from which a jury could reasonably conclude that the manner in 
which the drink dispenser was set up caused ice to fall on the unprotected tile 
floor on a regular basis, creating a recurring dangerous condition of which 
Brookshire was aware. Because the Court concludes otherwise, I respectfully 
dissent. 
Generally, in 
a premises liability case, the store owner must have knowledge of the dangerous 
condition itself, and not just the situation that creates a dangerous condition. 
City of San Antonio v. Rodriguez, 931 S.W.2d 535, 536-37 (Tex. 1996) (per 
curiam). However, in Corbin v. Safeway Stores, Inc., we acknowledged that 
in a slip-and-fall case, the dangerous condition may be defined more broadly 
than the particular substance on the floor. 648 S.W.2d 292, 296 (Tex. 1983). For 
example, a display may qualify as a dangerous condition when the manner of the 
display itself creates an unreasonable risk of injury. Id. 
In 
Corbin, Safeway displayed grapes in a slanted bin over a tile floor. 
Safeway acknowledged that it was fully aware of the manner in which the grapes 
were displayed and the potential risk to customers of grapes falling to the 
floor. Id. at 296. We held that this was some evidence from which a jury 
could conclude that the condition in which Safeway maintained its display posed 
an unreasonable risk of foreseeable harm for which Safeway could be held liable. 
Id. at 297. In Corbin, it was the manner of the display, rather 
than an individual grape on the floor, that constituted a dangerous condition 
and exposed Safeway to liability. Id. at 296. We reiterated nearly a 
decade later that the knowledge requirement was met in Corbin because 
“Safeway did not have to know that a particular grape was on the floor at a 
particular time because it knew that the grapes would be on the floor due to the 
nature of the display.” Keetch v. Kroger Co., 845 S.W.2d 262, 265 (Tex. 
1992). 
 Since 
Corbin, we have elaborated on displays as dangerous conditions, holding 
that “the mere fact that a store has a customer sampling display cannot, without 
more, be evidence of a condition on the premises that poses an unreasonable risk 
of harm.” H.E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218, 219 (Tex. 
1999) (per curiam). The Court relies upon this language from Resendez to 
support its conclusion that, as a matter of law, the soft-drink display here was 
not an unreasonably dangerous condition. And in an attempt to distinguish this 
case from Corbin, the Court concludes there is no evidence to suggest 
that Brookshire’s drink dispenser was situated in such a way that ice on the 
floor was a greater danger than one would ordinarily encounter with such 
displays. I disagree. 
The 
circumstances before the Court in Resendez differ from those presented 
here, which are more closely analogous to the Corbin situation. The 
display in Resendez contained a bowl filled with loose grapes for 
customers to sample. Id. at 218. The bowl was level, recessed 
approximately five inches below the table’s surface, and had a three-inch 
railing surrounding its edges. Id. The entire produce section had a 
non-skid surface, floor mats were in place around the table on which the grapes 
were displayed, and there were warning cones near the display. Id. at 
219. Concluding the plaintiff had presented no evidence that the manner of 
display created an unreasonable risk to customers of grapes falling on the 
floor, we rendered judgment that Resendez take nothing. Id. 
In the 
present case, on the other hand, Taylor presented evidence from which a jury 
could conclude that the manner in which the drink display was arranged 
frequently caused ice to fall on the exposed tile floor, creating a dangerous 
condition of which Brookshire was aware. The assistant store manager, Dewayne 
Jenkins, described the drink dispenser arrangement at the store. Beneath the 
dispenser was a mat which, when facing the machine, extended beyond the 
dispenser’s left edge but, to the right, only lined up with the edge of the 
machine. In other words, the drink dispenser was not centered on the mat, 
extending only to the edge on the right side. Beyond the drink dispenser to the 
right was the deli section, which had two mats placed in front of the display 
counter from end to end. There was a significant gap between the drink and deli 
areas where the tile floor was unmatted and exposed; this was the area where 
Taylor slipped and fell on melted ice. Jenkins testified that the mat underlying 
the dispenser could have been wider so that it would have been harder for ice to 
“bounce” over to the exposed floor, and acknowledged that “a piece of ice didn’t 
have to go very far at all to wind up on this area that was tile.” Jenkins also 
testified that a mat could have been placed over the exposed area to keep people 
from slipping when ice migrated there. Finally, Sharon White, a deli clerk, 
testified that ice or water fell in the unprotected tile area on a regular 
basis, and that water on a tile floor poses a danger to customers. Unlike the 
plaintiff in Resendez, Taylor did present evidence that the drink 
dispenser was set up in a manner that presented an unreasonable risk of ice 
falling on the unprotected tile floor. In my view, as in Corbin, a 
reasonable jury could infer from this evidence that Brookshire had knowledge of 
a dangerous condition that posed an unreasonable risk of harm.
In a case 
with similar facts, National Convenience Stores, Inc. v. Erevia, the 
court of appeals held that a barrel-type cold drink display was an unreasonably 
dangerous condition. 73 S.W.3d 518, 522-23 (Tex. App.— Houston [1st Dist.] 2002, 
pet. denied). In Erevia, the store manager testified there was a 
heightened concern about water and ice around the self-service display, and that 
company policy suggested mats should be placed around the barrels. Id. at 
523. Following our decision in Corbin, the court of appeals held that ice 
falling from barrels was a common problem and, because the store did not follow 
suggested safety precautions, the store owner had constructive knowledge of a 
dangerous condition. Id. 
The Court 
claims our decision in Rodriguez supports the conclusion that the display 
in this case could not be a dangerous condition. 931 S.W.2d at 536-37. There, 
Rodriguez sued the City of San Antonio for injuries he sustained when he slipped 
in a wet spot on the floor while playing basketball. The wet spot resulted from 
a leak in the roof. The City admitted it knew the roof leaked, but denied any 
knowledge of water on the floor at the time Rodriguez slipped. We reversed a 
verdict in Rodriguez’s favor based on a defective jury charge that erroneously 
implied the City had a duty to repair the roof. Id. at 536. However, we 
held that the premises owner did have a duty “to prevent the water that leaked 
through the roof from causing a dangerous condition.” Id. Although the 
jury should have been instructed that the alleged dangerous condition was the 
water on the floor rather than the leaky roof, we held that knowledge of the 
leaky roof was evidence from which a jury might infer that the person in charge 
knew there would be water on the floor. Id. at 537. 
Like the 
defendant in Rodriguez, Brookshire may not have been able to prevent ice 
from falling on the floor, but it had a duty to customers to prevent the ice 
that did fall from causing a dangerous condition. Id. at 536. Given the 
evidence that Brookshire was aware ice falling on the exposed tile floor was a 
continuous problem but did not provide additional matting or warning signs to 
make the area safe, a question of fact exists as to whether Brookshire had 
constructive knowledge of an unreasonably dangerous condition. Accordingly, the 
case should be remanded for trial. Because the Court renders judgment in 
Brookshire’s favor as a matter of law, I respectfully dissent. 
 
 
 
__________________________________________
Harriet 
O’Neill
Justice
 
 
OPINION DELIVERED: December 1, 
2006.