Opinion issued August 22, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00562-CV

———————————

### JULIETH MENDOZA HERNANDEZ, Appellant

### V.

### KROGER TEXAS, L.P., Appellee

---

### On Appeal from the 240th District Court
### Fort Bend County, Texas
### Trial Court Case No. 17-DCV-240598

---

### MEMORANDUM OPINION

Julieth Mendoza Hernandez sued Kroger Texas, L.P. after slipping on the wet floor of a Kroger grocery store and suffering injuries. Kroger filed a no-evidence motion for summary judgment focused on the knowledge element of Mendoza's premises-liability claim. Kroger argued that Mendoza presented no

evidence that Kroger had actual or constructive knowledge of a dangerous condition on its premises. The trial court granted Kroger's no-evidence motion and entered a final, take-nothing judgment against Mendoza, who appealed.

In her first issue, Mendoza challenges summary judgment on her premises-liability claim. In her second issue, she contends the trial court erred in granting a final, take-nothing judgment because her petition asserted two additional causes of action that Kroger did not challenge through its summary-judgment motion.

We reverse and remand.

## Background

Julieth Mendoza Hernandez visited a Kroger grocery store around 9 p.m. one evening to pick up some items. As she was checking out, she realized she had picked up the wrong type of milk. She walked back to the milk display, selected a different milk, and walked down Aisle Four to return to the cash register. Unbeknownst to Mendoza, there was an accumulation of water on the tile floor midway down Aisle Four in front of a self-serve water dispenser. Mendoza slipped on the water, fell to the floor, and injured her back, knees, and hand.

Aisle Four is a central aisle lined with various drink products. Midway down the aisle, there is a self-serve Glacier-brand water-tank refill station positioned

2

flush with the outer edge of the shelving.[1] The water station is connected to the store's waterline. Customers can place containers in front of the refill station, fill the containers with water, and lift the filled containers into their grocery carts or otherwise transport them from the store.

According to Kroger's store manager at the time, Deanna David, customers have been known to spill water in front of the Glacier water station. She stated that Kroger keeps a mat in front of the water dispenser to address the fall hazard.

According to Kroger's closing manager, Jamal Akhter, who was working the evening of Mendoza's fall, the tile near the refill station routinely had to be cleaned and dried—usually once or twice a day—because spills would go beyond the mat's border. Akhter said the managers and cleaning staff "pay attention to that aisle especially" because "there's a water dispenser" on the aisle. Akhter added, though, that, he had no knowledge of any incidents being reported of customers falling on Aisle Four before Mendoza's fall.

On the day of Mendoza's fall, Akhter arrived at work at 4 p.m. and walked the entire store, looking for and correcting any found issues. He walked the store a "couple" times more before Mendoza's 9 p.m. fall. During his store walks that evening, he never saw a spill on Aisle Four.

---

[1]    A photograph of Aisle Four was attached to the summary-judgment pleadings. It is appended to this opinion. There was summary-judgment evidence that the picture accurately reflects how Aisle Four appeared at the time of Mendoza's fall, except that the wet-floor sign was added after her fall.

Akhter said he was not the only employee walking the store that evening. By policy, Kroger's cleaning staff is required to walk the floor every two hours. The cleaning staff is instructed to clean any spills they find on their walks. According to Akhter, the cleaning staff member who was working the evening of Mendoza's fall reported that he had not seen any spills that evening.

Kroger does not dispute that there was water on the floor or that Mendoza slipped on the water. Instead, it argues Mendoza has no evidence Kroger had actual or constructive knowledge of an unreasonably dangerous condition to move forward with her suit.

## Premises Liability

In her first issue, Mendoza argues the trial court erred in granting a no-evidence summary judgment to Kroger because she presented more than a scintilla of evidence that Kroger had actual or constructive knowledge of an unreasonably dangerous condition on its premises. Before addressing the level of proof Mendoza provided on the knowledge element, we consider the appropriate standard of review and the general elements of a premises-liability claim.

### A. Standard of review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence motion for summary judgment must be granted if, after adequate time for discovery, the moving party asserts that

4

there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. TEX. R. CIV. P. 166(a)(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).

A party who files a no-evidence summary-judgment motion pursuant to rule 166a(i) has essentially requested a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). When the movant files its motion in proper form, the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged by the motion. *Id.* at 582; *Weaver v. Highlands Ins. Co.*, 4 S.W.3d 826, 829–30 (Tex. App.—Houston [1st Dist.] 1999, no pet.). We review the evidence presented by the summary-judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

## B.      Elements of a premises-liability claim

To begin, we recognize a distinction between negligent-activity claims and premises-defect claims, which are independent theories of recovery. *See Gen. Elec.*

*Co. v. Moritz*, 257 S.W.3d 211, 214–15 (Tex. 2008); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (noting "two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect"). "The lines between negligent activity and premises [defect] liability are sometimes unclear," but, in a general sense, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises [defect] liability encompasses a nonfeasance theory, based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010).

A finding of liability for a negligent-activity theory "requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). "In contrast, to assess liability in negligence for a premises defect, an injury must occur as a result of a dangerous condition that the defendant knows or should have known to exist yet fails to reasonably warn of the condition or take reasonable measures to remedy it." *Oncor Elec. Delivery Co., LLC v. Murillo*, 449 S.W.3d 583, 592 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Knowledge (actual or constructive) is required. *Id.*

When asserting a premises defect claim, an invitee—i.e., one who enters another's land with the owner's knowledge and for the mutual benefit of both, *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)—must establish four elements related to the condition of the premises and the owner's knowledge and response to it:

(1) a premises condition created an unreasonable risk of harm to the invitee;
(2)  the owner knew or reasonably should have known of the condition;
(3) the owner failed to exercise ordinary care to protect the invitee from the danger; and
(4) the owner's failure was a proximate cause of injury to the invitee.

*Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009); *see Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). Kroger challenged only the second of these elements—the knowledge element—in its summary-judgment motion.

To avoid summary judgment, Mendoza was required to present evidence that Kroger had actual or constructive knowledge of an unreasonably dangerous condition on the premises. *Keetch*, 845 S.W.2d at 265. A slip-and-fall plaintiff establishes actual knowledge by proving "the defendant placed the substance on the floor [or] actually knew that the substance was on the floor." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). Constructive knowledge, on the other hand, is established with proof that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity

7

to discover it," even if the owner did not. *Id.*; *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000) (evaluating whether condition existed long enough for owner to have discovered it through reasonable inspection). The "long enough" aspect of a constructive-knowledge claim imposes a temporal requirement. *Reece*, 81 S.W.3d at 815.

The Texas Supreme Court has explained the rationale for imposing a temporal requirement on plaintiffs relying on a theory of constructive knowledge: without it, a storekeeper could be held liable for the carelessness of a person outside its control who instantly created a dangerous condition the storekeeper had no time to remedy. *See id.* And because premises liability is not strict liability, when relying on a theory of constructive knowledge, there must be some proof of how long the hazard was there before liability can be imposed for failure to discovery and rectify, or warn, of it. *Id.* This is referred to as the "time-notice rule." It applies in constructive-notice claims, but not actual-notice claims. *Id.* at 816.

## C. Mendoza's first argument: She provided more than a scintilla of proof that Kroger had constructive knowledge of the water on the floor

The summary-judgment record includes evidence that Kroger had a policy of routinely walking the store to look for dangers and correct them. Akhter testified he walked the store a couple times between his arrival at 4 p.m. and Mendoza's fall at 9 p.m., and another manager, David, explained "walking the store" meant "to

8

essentially walk every single inch of the store," looking for things that need to be corrected. Akhter testified he did not see any spilled water near the water dispenser that evening, before Mendoza fell. He also testified the cleaning staff member did not see spilled water either. Finally, Akhter testified that, historically, he would encounter spilled water on Aisle Four one or two times per day.

The constructive-knowledge element requires proof a dangerous condition existed for some length of time. *Reece*, 81 S.W.3d at 815. To impose liability, a premises owner must be shown to have had a reasonable opportunity to discover and remedy the dangerous condition or warn against it. *Id.* at 816. More is required than that an employee *could* have discovered the condition; there must be evidence the premises owner reasonably *should* have discovered it because it was there a sufficient amount of time. *Id.* This is a significant burden because, at times, proof of how long a spill existed can be difficult to gather. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 938 (Tex. 1998) (noting that time-notice rule is "harsh and demanding on plaintiffs").

Mendoza argues that she presented evidence of how long the spill was present through the Kroger employees' testimony that Aisle Four is inspected multiple times per day and it generally has to be cleaned once or twice daily. This however is no evidence of how long this specific spill was on the floor before Mendoza's fall.

9

Mendoza presented no evidence of how long the spill was present before her fall. Therefore, there is no evidence on the element of constructive knowledge of the spill, which Kroger challenged in its no-evidence summary-judgment motion. *See id.*; *Aaron v. Magic Johnson Theatres*, No. 01-04-00426-CV, 2005 WL 2470116, at *5 (Tex. App.—Houston [1st Dist.] Oct. 6, 2005, no pet.) (mem. op.) (affirming no-evidence summary judgment because injured patron presented no evidence of how long floor lights had been non-functioning at time of fall in dark theater).

Mendoza alternatively argues the trial court erred in granting Kroger's no-evidence motion for summary judgment because she provided some evidence of Kroger's actual knowledge of a dangerous condition.

## D. Mendoza's second argument: She provided more than a scintilla of proof that Kroger had actual knowledge of a dangerous condition

In making this argument, Mendoza seeks to rely on Kroger's knowledge of the dangerousness of the water display to defeat Kroger's no-evidence summary-judgment motion.

Generally, to meet the knowledge element in a premises-defect case, a slip-and-fall plaintiff has to establish knowledge of the specific item that ended up on the floor and caused the plaintiff to fall. *See, e.g.*, *Reece*, 81 S.W.3d at 814 (stating that slip-and-fall plaintiff must provide evidence establishing knowledge of "substance on the floor"). But, at least in some circumstances, the focus of the

10

inquiry can shift from the specific to the general. Instead of needing evidence of knowledge of a specific item on the floor, a slip-and-fall plaintiff can, under appropriate facts, rely on the storeowner's knowledge that its display, itself, presented an unreasonable fall risk to patrons. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) (if facts support jury determination that self-serve grape display, itself, was unreasonably dangerous, plaintiff would be relieved of burden to demonstrate "storeowner's actual or constructive knowledge of the presence on the floor of the object causing the fall").

Relying on *Corbin*, Mendoza contends the Glacier self-serve water dispenser was unreasonably dangerous, and she argues Kroger had actual knowledge of its existence and its dangerous character. By focusing on the water dispenser, she asserts she need not present evidence of Safeway's knowledge of the spill that caused her fall.

Kroger responds that *Corbin* is an exceptional case with no application to Mendoza's claim that is otherwise unavailable to Mendoza on appeal.

We will review *Corbin*, address whether Mendoza is foreclosed from relying on its principles, review cases decided after *Corbin*, and, in light of that review and the holdings in those cases, analyze whether evidence of Safeway's knowledge about the Glacier self-serve water dispenser's characteristics and associated risk is sufficient to present a jury question.

11

**1.** *Corbin v. Safeway*

In *Corbin*, Safeway set up a self-serve grape display in its grocery store. *Id.* at 294. The floor under the grape display was green, like the grapes. *Id.* Safeway knew there was a high risk of grapes being knocked to the floor as customers accessed the grape display; therefore, Safeway had a policy of requiring non-skid, non-slip mats in front of the display. *Id.* Despite its policy, there was evidence Safeway did not have any mats in front of the grape display on the day the plaintiff slipped on fallen grapes, fell to the floor, and was injured. *Id.* at 296–97.

The plaintiff had no evidence of how long the grapes had been on the floor when he fell; therefore, he could not meet the constructive knowledge element when arguing that the fallen grapes presented an unreasonably dangerous condition on the premises. *Id.* at 296. But the plaintiff presented an alternative argument: he argued that the self-service grape display, itself, was unreasonably dangerous and Safeway had actual knowledge of the display and its dangerous character. *Id.*

The Court noted Safeway's admission that its grape display presented an unusually high risk of falls. *Id.* at 296–97. The Court also noted that the evidence permitted a reasonable jury to infer that, despite Safeway's knowledge and policy, Safety failed to place a non-slip mat in front of the grape display. *Id.* The Court reversed the directed verdict entered in Safeway's favor and remanded the case for trial, reasoning that a jury reasonably could have concluded, on this evidence, that

12

the grape display's risks were unreasonable and that Safeway did not use reasonable care to take preventive measures against a foreseeable harm. *Id.*

On remand, the *Corbin* plaintiff would not be required to produce evidence that Safeway had actual or constructive knowledge of one or more spilled grapes on its floor at the time he fell. *Id.* at 296–97. Instead, fact issues existed on whether the grape display, itself, was an unreasonably dangerous condition that Safeway did not adequately guard against, given Safeway's admitted knowledge of the "unusually high risks accompanying customer usage of [its] display." *See id.*

## 2.     Whether Mendoza may argue on appeal that *Corbin* applies

Kroger argues that Mendoza waived any argument under *Corbin* by not relying on it in the trial court. We cannot agree. We see no legal basis for Kroger's argument that application of *Corbin* in a premises-defect case can be waived by failure to cite to the case. It has never been the law that a particular case must be cited to argue the application of its underlying principle. *Cf., e.g.*, *Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 536 (Tex. 2012) ("*Casteel* error may be preserved without specifically mentioning *Casteel*."). Mendoza was not required to cite to *Corbin* to rely on its legal principles. Even if she were required to have done so, Mendoza specifically argued in response to Kroger's summary-judgment motion that "the water refill station placed in a high foot traffic area posed an unreasonable risk of harm *in itself* . . . ." This argument that the self-serve

13

water dispenser presented an unreasonably dangerous condition aligns with the *Corbin* analysis and invites analysis of Kroger's knowledge focused on the water dispenser versus the fallen water. *See* 648 S.W.2d at 296–97.

There is no merit to Kroger's waiver argument.

### 3.    Application of *Corbin* in other cases

There have been several cases, since *Corbin*, in which plaintiffs have argued that a variety of self-service displays and dispensers qualify as unreasonably dangerous conditions. *See, e.g.*, *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406 (Tex. 2006) (ice and drink dispenser with misaligned mat that allowed melted ice to accumulate on exposed tile floor); *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218 (Tex. 1999) (self-serve grape display); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258 (Tex. 1992) (bag-your-own-chicken self-service display); *Sova v. Bill Miller Bar-B-Q*, No. 03-04-00679-CV, 2006 WL 1788231 (Tex. App.—Austin June 30, 2006, no pet.) (iced condiment bar); *Nat'l Convenience Stores, Inc. v. Erevia*, 73 S.W.3d 518 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (barrel-type display holding iced drinks to be pulled from display by purchasing customers).

Two of those cases, *Resendez* and *Erevia* are instructive. In *Resendez*, a grocery store patron was injured after slipping on grapes that had fallen from a sampling display. 988 S.W.2d at 218–19. The display was on a table with a three-

14

inch railing around its edges, and there was a recessed bowl in the middle of the table. *Id.* The bowl was "level, sitting on ice and recessed about five inches" below the table's surface. The bowl held loose grapes for sampling. *Id.* The floor covered with a non-skid surface, and the area around the display was covered by floor mats. *Id.* Additionally, there were warning cones near the display. *Id.*

The Court rejected the plaintiff's *Corbin*-based argument that the grape display, itself, was an unreasonably dangerous condition, for purposes of evaluating the storeowner's knowledge. *Id.* at 219. The court held, as a matter of law, "the mere fact that a store has a customer sampling display cannot, *without more*, be evidence of a condition on the premises that poses an unreasonable risk of harm." *Id.*

In the other case, *Erevia*, a Stop-N-Go convenience store had a four-feet-tall drink display shaped like a Coca Cola bottle. *Id.* at 520. Customers could open the display's lid and retrieve drinks from its iced interior. *Id.* One day, a customer slipped on a puddle at the base of the display and was injured. *Id.* The customer had no evidence of how long the puddle had been there to support a claim of constructive knowledge of the spill. *Id.* She, instead, argued there was sufficient evidence to allow the jury to find that the iced barrel, itself, was a dangerous condition of which the company was aware. *Id.* at 521. In support, she noted the store manager's testimony that ice could topple out when drinks were removed

15

from the barrel and the store management had "a heightened concern about ice and water near iced-barrel displays." *Id.* at 520, 523. Additionally, there was evidence the company had a policy of keeping safety mats around the display to absorb moisture, which is evidence of an appreciated risk, yet there were no mats around the display when the customer fell. *Id.* at 520, 523 & n.2.

The plaintiff won a jury verdict on her premises-defect claim. The store owner appealed, arguing there was legally or factually insufficient evidence of its knowledge of a dangerous premises condition. *Id.* at 520. The storeowner argued the case was like *Resendez*, the "mere presence" of a display did not put the store on notice of a dangerous condition, and there was no evidence this display was unreasonably dangerous. *Id.* at 522.

This Court affirmed the jury verdict for the plaintiff. *Id.* at 523. We found that *Resendez* was "readily distinguishable" in that the *Erevia* plaintiff presented evidence of "much more than the mere presence of a self-service display." *Id.* She presented evidence the store manager knew ice could spill when drinks were removed from the display, had a heightened concern about water and ice around the barrel, had a company policy to use absorbent mats because of that concern, yet had no mat in place. *Id.* Based on that evidence, we held that a jury reasonably could have inferred that fallen ice presented a known, repeated risk and that the store's failure to use safety mats, contrary to its company policy and knowledge of

16

the danger of spilled ice, posed an unreasonable risk of harm. *Id.* Evidence of an unreasonably dangerous condition—the barrel display—and evidence of the storeowner's knowledge of that condition was legally and factually sufficient; therefore, we affirmed the jury's verdict. *Id.* (jury reasonably could have decided store "had knowledge of a condition that posed an unreasonable risk of harm," thus, "the evidence was legally and factually sufficient.").

With these cases in mind, we turn now to whether there was sufficient summary-judgment evidence to support Mendoza's position that the Glacier water dispenser was an unreasonably dangerous condition that Kroger had actual knowledge of—like in *Corbin* and *Erevia*.

**4.     Whether Mendoza presented evidence to reach the jury on the self-serve water dispenser as an unreasonably dangerous condition of which Kroger had actual knowledge**

*Resendez* establishes that, as a matter of law, the mere fact that a store has a customer serve-service display cannot, "without more," be evidence of a condition on the premises that poses an unreasonable risk of harm. 988 S.W.2d at 219. *Corbin* provides an example of the type of evidence that can provide the "more" to raise a jury question about the unreasonableness of a condition, as well as the storeowner's knowledge. In that case, the grapes in the self-service display were unbagged, the opening to the bin holding the grapes was slanted instead of parallel to the floor, the floor was the same color as the grapes that might fall, there were

17

no safety mats in the area, and grapes were known to fall frequently. 648 S.W.2d at 296. The storeowner acknowledged the grape display presented an unusually high risk of falls. Also, the store had a company policy to use safety mats because of the high risk of falls, but the evidence indicated that there were no mats in use at the time the customer fell. Thus, there was evidence that the "manner of display" created a heightened risk of items falling to the floor and causing a fall hazard and that the storeowner knew of the display's characteristics and its heightened risk. That evidence raised fact issues regarding Safeway's knowledge of the premises condition, the unreasonableness of the risk associated with the condition, and the reasonableness of Safeway's conduct relative to the risk. *Id.* at 296–97.

Similarly, in *Erevia*, the customer presented evidence of "much *more* than the mere presence of a self-service display." 73 S.W.3d at 523. "The store manager testified that water on floors was recognized as a hazard," "ice could spill out [of the barrel dispensers] when drinks were removed from barrels," "there was a heightened concern about water and ice around iced barrels," and, despite a company policy to use mats, there were no mats around the barrel where the customer fell. *Id.* This evidence went beyond the mere presence of a display. *Id.* The *Erevia* jury received sufficient evidence to determine that the store owner had actual or constructive knowledge of a condition on the premises, the condition posed an unreasonable risk of harm, the store owner did not exercise reasonable

care to reduce or eliminate the risk, and the store owner's failure to use such care proximately caused the customer's injury. *Id.* at 521–23.

In both *Corbin* and *Erevia*, there was evidence the store owner knew that a fall hazard would be created, with some frequency, "due to the nature of the display." *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992) (discussing *Corbin*). When the nature of a display results in a known, "common problem" of a slippery substance repeatedly falling to the floor and posing a fall hazard, a fact issue is raised regarding the store owner's knowledge of an unreasonable risk associated with a premises condition. *Erevia*, 73 S.W.3d at 523; *Crosby v. Minyard Food Stores, Inc.*, 122 S.W.3d 899 (Tex. App.—Dallas 2003, no pet.) (affirming denial of premises owner's motion for directed verdict, holding that injured patron presented sufficient evidence to reach the jury because patron showed that entrance mat had tendency to repeatedly buckle and premises owner was aware of continuing hazard and of patrons falling from the hazard).

Mendoza presented summary-judgment evidence that the Glacier self-service water dispenser was placed midway down a grocery store aisle. The the dispenser was not in a corner location, nor was it cordoned off so that access to the area would be limited to those intentionally approaching the water source, intending to access it. At this location, any customer intending to shop on Aisle Four, as well as all customers who, like Mendoza, were using Aisle Four as a path

19

to another destination in the store without slowing to select products or scan the aisle, would be near the water dispenser. And store managers testified that they knew there were frequent spills at the dispenser that required cleaning once or twice daily, including spills that went beyond the mat. In sun, there was evidence that Kroger knew it had a self-service display in a traffic area, that water spills occurred in the traffic area daily, and that there were repeated instances of the mat proving inadequate to absorb the spilled water. *Cf. Erevia*, 73 S.W.3d at 523 ("Here, the jury could infer from the manager's testimony that ice falling from iced barrels was a common problem associated with the nature of the display.").

We conclude Mendoza presented more than a scintilla of evidence that the nature of the self-service water dispenser was such that water frequently fell to the floor, outside the mat, in front of the Glacier water dispenser to create an unreasonable fall hazard for Kroger customers and that Kroger had actual knowledge of this common event and condition. A jury question therefore existed. *See Corbin*, 648 S.W.2d at 296. The trial court erred in granting Kroger's no-evidence summary-judgment motion.

Mendoza presented adequate evidence to raise a jury question. At trial, the factfinder will be tasked with determining several questions of fact, including whether Kroger exercised reasonable care to reduce or eliminate the risk associated

with the Glacier water dispenser, a question that is not before us and we do not address. *See Erevia*, 73 S.W.3d at 521 (listing elements of premises-defect claim).

We sustain Mendoza's first issue.

## Mendoza's Two Other Pleaded Causes of Action

In her second issue, Mendoza challenges the trial court's order granting a final judgment when Kroger's summary-judgment motion only challenged an element of her premises-liability claim. Both parties agree that the trial court's order denying her any relief on her two other pleaded causes of action was directly based on the trial court's ruling on the premises-liability claim. We have held that the trial court erred in granting Kroger summary judgment on that claim. Accordingly, we reverse the judgment in its entirety and remand for additional proceedings consistent with our opinion.

## Conclusion

We reverse and remand for additional proceedings.


Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.

21

Appendix

